# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

JOSE RENE CORNEJO-MEJIA,

Petitioner,

v.

MICHAEL BERNACKE, *et al.*,

Respondents.

Case No. 2:25-cv-02139-RFB-BNW

**ORDER**

Before the Court is the (ECF No. 3) Motion for a Preliminary Injunction by Petitioner Jose Rene Cornejo-Mejia. For the following reasons, the Court grants the Motion.

## I.  INTRODUCTION

This case is one of a growing number before this Court challenging the federal government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The policy is based on a new interpretation of the Immigration

---

[1] This Court has already granted petitioners relief in thirteen similar challenges. See, e.g., Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK (D. Nev. Oct. 30, 2025); Berto Mendez v. Noem, No.

and Nationality Act (INA) by the executive branch, specifically 8 U.S.C. § 1225(b)(2)(A), as requiring the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention is mandatory no matter how long a noncitizen has resided in the country, and without any due process to ensure the government has a legitimate interest in their detention.

This sweeping new policy, which the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ), adopted on a nationwide basis on July 8, 2025,[2] subjects millions of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country,[4] including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. See Escobar Salgado v. Mattos, 2025 WL 3205356, at *11-22 (D. Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when interpreted according to fundamental canons of statutory construction," as well as the legislative history and decades of consistent agency practice establish "that the government's new interpretation and policy under [§

---

2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025); Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025)

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

[4] Kyle Cheney, More than 100 judges have ruled against the Trump admin's mandatory detention policy, Politico (Oct. 31, 2025 at 4:29 p.m. EDT), https://www.politico.com/news/2025/10/31/trump-administration-mandatory-detention-deportation-00632086, https://perma.cc/Z8QY-VHXM.

1225(b)(2)(A)] is unlawful.") see also, e.g., Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.") (collecting cases).

Petitioner challenges Federal Respondents' application of this policy to detain him without a bond hearing as unlawful under the INA and unconstitutional. For the reasons set forth below, the Court finds that Petitioner is likely to succeed on the merits of his claims that his detention is unlawful under the INA and the Due Process Clause, that Petitioner is suffering and will continue to suffer irreparable harm in the absence of relief, and that the equities and public interest favor granting preliminary relief. The Court therefore grants Petitioner's Motion and orders Respondents to provide him a bond hearing within seven days.

## II.    PROCEDURAL HISTORY

On October 30, 2025, Petitioner Hernandez Duran, who is currently detained in Immigration, Customs, and Enforcement (ICE) custody at the Henderson Detention Center, filed his 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus against Respondents Michael Bernacke, in his official capacity as the Director of the Salt Lake City Field Office of ICE Enforcement and Removal Operations; Kristi Noem, in her official capacity as Secretary of DHS; DHS as the federal agency responsible for implementing and enforcing the INA; Pamela Bondi, in her official capacity as Attorney General of the United States; and Reggie Radar, in his official capacity as the Police Chief of the Henderson Detention Center. ECF No. 1. Petitioner concurrently filed the instant Motion for Preliminary Injunction. ECF No. 2.

On October 31, 2025, this case was transferred to the undersigned Judge as related to two pending putative class actions before this Court. See ECF No. 5. On October 31, 2025, this Court ordered counsel for Respondents to show cause in writing why the Court should not grant Petitioner's requested preliminary injunction. ECF 8. Respondents' counsel filed their Response on November 7, 2025. ECF No. 13. On November 14, 2025, Petitioner filed a motion to expedite resolution of the instant Motion in light of an impending merits hearing in removal proceedings

1  scheduled by the Las Vegas Immigration Court.

2  The Court's Order follows.

### III.  BACKGROUND

#### A.  Legal Background

The Court fully incorporates by reference the legal background regarding the government's detention authority and removal proceedings under the INA, as well as the government's challenged new mandatory detention policy, set forth in its ruling in Escobar Salgado v. Mattos, 2025 WL 3205356, at *2-6 (D. Nev. Nov. 17, 2025). The Court finds Petitioner is similarly situated to Petitioners Mena-Vargas and Reyes-López in that case, because Petitioner Cornejo-Mejia sought a custody redetermination (*i.e.*, bond hearing) after the BIA's ruling in Hurtado. The IJ denied his request on October 27, 2025, concluding that Petitioner was an "applicant for admission" under Hurtado, and that she therefore lacked the authority to consider or grant bond to Petitioner. ECF No. 2-3.

#### B.  Petitioner Jose Rene Cornejo-Mejia

The Court makes the following findings of fact relevant to Petitioner's individual circumstances. Petitioner is a 34-year-old noncitizen, native to El Salvador, who has lived continuously in the United States since entering without inspection over a decade ago in 2012. Petitioner shares custody of his three U.S. citizen daughters with their mother—his ex-wife—and lives with his partner in Las Vegas, Nevada. Prior to his detention, Petitioner had steady, full-time employment in the construction trade. Petitioner has no criminal convictions or arrests outside of the traffic stop that led to his arrest on September 30, 2025.

On September 30, 2025, Petitioner was stopped by local police in Las Vegas for unpaid traffic fines and subsequently taken into ICE custody. DHS has detained him at Henderson Detention Center since. No criminal prosecution or conviction followed the police stop.

On October 1, 2025, DHS initiated removal proceedings by issuing a Notice to Appear (NTA), charging Petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen "present in the United States without being admitted or paroled, and under 8 U.S.C. §

1182(a)(7)(A)(i)(I), as an "immigrant who, at the time of application for admission, is not in possession of a valid unexpired visa, reentry permit, border crossing card, or other valid entry document" required under the INA. ECF No. 13-1. Petitioner requested a custody redetermination hearing under 8 U.S.C. § 1226(a), on the basis that he was a long-term resident apprehended in the United States' interior and therefore entitled to bond upon an individualized finding that he is neither a flight risk nor danger to the community. However, on October 27, 2025, IJ Ann McDermott found she lacked jurisdiction under Hurtado to grant bond and deemed Petitioner's detention mandatory under 8 U.S.C. § 1225(b)(2). See ECF Nos. 2-3; 13-2. The IJ made no findings regarding any potential flight risk or danger to the community presented by Petitioner nor did DHS submit any individualized evidence justifying Petitioner's detention on those grounds. Id.

### IV.   LEGAL STANDARDS

#### A. Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a

1  likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts
2  in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one
3  element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856
4  F.3d 666, 669 (9th Cir. 2017).

### B.  § 2441 Petition for Writ of Habeas Corpus

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

### V.  DISCUSSION

As a threshold matter, the Court issues this Order without a hearing. In the Ninth Circuit, whether to hold an evidentiary hearing or hear oral argument on a preliminary injunction is a matter of the district court's discretion. See, e.g., Stanley v. Univ. of S. California, 13 F.3d 1313, 1326 (9th Cir. 1994) (citations omitted) (refusal to hold a preliminary injunction hearing "is not an abuse

1   of discretion if the parties have a full opportunity to submit written testimony and to argue the
2   matter."). A court may rely solely on the briefing and affidavits of the parties where the urgent
3   need for injunctive relief so requires. Int'l Molders' and Allied Workers' Local Union No. 164 v.
4   Nelson, 799 F.2d 547, 555 (9th Cir. 1986).

5   　　　Here, the parties have not requested oral argument or an evidentiary hearing. See id. (noting
6   the failure to request an evidentiary hearing may constitute waiver). Additionally, the Court finds
7   there are no disputes of fact material to the request for preliminary relief that would necessitate an
8   evidentiary hearing. For those reasons and considering the urgent need for injunctive relief where
9   Petitioner's liberty is at stake, the Court finds a preliminary injunction ruling without a hearing is
10  warranted in this case.

　　　**A. Jurisdiction**

　　　The Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. §§ 1252(a), (b)(9), (g), and (e) do not apply, as discussed and held by the Court in granting habeas relief to similarly situated petitioners, which the Court fully incorporates by reference and applies here. See Vazquez, 2025 WL 2676082, at *7-9; Roman, 2025 WL 2710211, at *5; Escobar-Salgado, 2025 WL 3205356, at *8-10.

　　　**B. Administrative Exhaustion**

　　　The Court fully incorporates by reference its prior finding that administrative exhaustion is excused as futile due to the BIA's decision in Hurtado. See Vazquez, 2025 WL 2676082, at *9-10.

　　　**C. Preliminary Injunction**

　　　The Court now turns to the analysis of Petitioner's entitlement to preliminary relief under the Winter factors.

　　　　　***i. Likelihood of Success or Serious Questions***

　　　First, the Court finds Petitioner has satisfied the most important Winter factor: he is likely to succeed on the merits of his Petition for Writ of Habeas Corpus, because (1) § 1226(a), not § 1225(b)(2), applies to him, and therefore his detention without a bond hearing violates the INA

1  and (2) Respondents' continued detention of Petitioner without a constitutionally adequate bond
2  hearing violates Petitioner's procedural and substantive due process rights. See Matsumoto v.
3  Labrador, 122 F.4th 787, 804 (9th Cir. 2024) (Likelihood of success on the merits is the most
4  important factor in a preliminary injunction analysis); see also Baird v. Bonta, 81 F.4th 1036, 1042
5  (9th Cir. 2023) (likelihood of success is especially important where a plaintiff seeks a preliminary
6  injunction because of an alleged constitutional violation).

7      The Court fully incorporates by reference its reasoning and holding from Escobar-Salgado.
8  WL 3205356, at *10-26. As set forth in that Order, the Court rejects Respondents' statutory
9  interpretation and finds Petitioner is detained under § 1226(a), because he is a "longtime U.S.
10 resident[ ], who [was] arrested and detained by ICE far from any port of entry." Id. at 22. The
11 Court further incorporates its finding in Escobar-Salgado, that Petitioner's detention without a
12 bond hearing wherein the government must establish an individualized justification to continue to
13 detain him violates his procedural and substantive due process rights under the Fifth Amendment.
14 See id. at *22-26.

15     **ii.  *Irreparable Harm***

16     The next factor requires a showing "that irreparable harm is likely, not just possible" in the
17 absence of an injunction. All. for the Wild Rockies, 632 F.3d at 1131. Petitioner clearly faces
18 irreparable harm in the absence of judicial intervention. "It is well established that the deprivation
19 of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695
20 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, it follows
21 "inexorably" from this Court's conclusion that Petitioner's detention without a bond hearing
22 violates his due process rights that Petitioner has carried his burden as to irreparable harm.
23 Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). The Ninth Circuit has further
24 recognized, in concrete terms, the irreparable harms "imposed on anyone subject to immigration
25 detention (or other forms of imprisonment)." Id. In the absence of relief, "harms such as these will
26 continue to occur needlessly on a daily basis." Id.

27     **iii.  *Balance of Equities and Public Interest***

28     The remaining two factors for a preliminary injunction—the balance of equities and public

interest—"merge" when the government is the opposing party. Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (quotations omitted). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA).

The Court finds that the government's interest in enforcing immigration law is adequately protected by the bond hearing process, and its ability to present individualized evidence regarding its contention that prolonged detention of Petitioner is warranted to an IJ. The Court merely enjoins Respondents from asserting Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), pursuant to its obligation to interpret the relevant statutory provisions of the INA "independent of influence from the political branches." Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024). The harm to the government here is minimal. Moreover, it is the government's new reading of the INA which upends decades of consistent agency practice, and subjects millions of individuals to mandatory detention, that is creating the significant fiscal and administrative burden on the government. However, this is a burden of its own choosing.

In contrast, the hardships faced by Petitioner and the public interest in issuing an injunction weigh strongly in his favor. Detention has separated Petitioner from his partner, three children, employment, and community, and imposed economic hardship on his family. Hernandez, 872 F.3d at 996 ("in addition to the potential hardships facing [the plaintiff] in the absence of the injunction, the court may consider the indirect hardship to their friends and family members) (quotation marks and citation omitted). Further, Petitioner has been geographically isolated from his counsel, impeding his access to legal representation, and has suffered severe stress and anxiety while detained.

Because the Court has found it is likely that Respondents are unlawfully detaining

Petitioner under § 1225(b)(2), "neither equity or the public interest are furthered" by allowing Respondents' violation of the INA to continue—quite the opposite. Galvez, 52 F.4th at 832; Hernandez, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of . . . a likely unconstitutional process."). As such, this Court finds the balance of the equities and public interest "tip sharply towards" Petitioner. All. For the Wild Rockies, 632 F.3d at 1127. Therefore, even under a lesser showing that Petitioner has raised only "serious questions going to the merits" of his challenge to his detention, Petitioner is entitled to a preliminary injunction.

### D. Scope of Relief

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall ... dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

The Court finds that the specific harm suffered by Petitioner—detention without a statutorily required and constitutionally adequate bond hearing—is remedied by granting his request for a bond hearing under 8 U.S.C. § 1226(a) within seven days and enjoining Defendants from denying bond on the basis that he is detained under § 1225(b)(2). The Court sets a seven-day deadline because it finds Petitioner has been unlawfully detained for over six weeks. The Court finds that if a bond hearing is not provided promptly, no later than November 25, 2025, Respondents must release Petitioner until it is determined that his detention is warranted under § 1226(a). See, e.g., Lopez-Campos v. Raycraft, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) (ordering immediate release or a bond hearing within seven days); Velasquez Salazar v. Dedos, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (ordering a bond hearing or release within seven days); Salazar v. Dedos et al, No. 1:25-CV-00835-DHU-

JMR, 2025 WL 2676729 (D.N.M. Sept. 17, 2025) (ordering similar relief); Kostak v. Trump, No. CV 3:25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025) (same).

### E. Bond

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued that providing Petitioner a bond hearing under 8 U.S.C. § 1226(a) will be costly. Therefore, the Court declines to impose bond beyond any bond amount imposed by an IJ under § 1226(a).

### VI. CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that Petitioner's Motion for a Preliminary Injunction (ECF No. 3) is **GRANTED.**

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven (7) days, no later than **November 25, 2025**.

**IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by **November 25, 2025**, Petitioner shall be released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that the parties shall file a status report on the status of Petitioner's bond hearing by **November 27, 2025**. The status report shall detail if and when the

1  bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

2  **IT IS FURTHER ORDERED** that Respondents (ECF No. 11) Motion to Extend Time is
3  **GRANTED**, *nunc pro tunc*.

4  **IT IS FURTHER ORDERED** that Petitioner's (ECF No. 14) Motion to Expedite is
5  **DENIED as moot.**

6  **DATED:** November 18, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**